# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOHAN NAYAK,<br><br>        Plaintiff,<br><br>v.<br><br>KIMCO REALTY CORPORATION, MILTON COOPER, CONOR C. FLYNN, MARY HOGAN PREUSSE, PHILLIP E. COVIELLO, FRANK LOURENSO, HENRY MONIZ, VALERIE RICHARDSON, AND RICHARD B. SALTZMAN,<br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Mohan Nayak ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Kimco Realty Corporation ("Kimco" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Kimco and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Kimco and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company and Weingarten Realty Investors ("Weingarten") (the "Proposed Transaction").

2. On April 15, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Weingarten. Pursuant to the terms of the Merger Agreement the Weingarten shareholders will have the right to receive: (i) 1.408 newly issued shares of Kimco common stock; and (ii) $2.89 in cash for each common share for each share of Weingarten owned (the "Merger Consideration").

3. On June 23, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC (the "Registration Statement") on Form S-4/A, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Kimco and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Kimco shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.  This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.  This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8.  Plaintiff is, and has been at all times relevant hereto, the owner of Kimco shares.

9.  Defendant Kimco is incorporated under the laws of Maryland and has its principal executive offices located at 500 North Broadway, Suite 201 Jericho, New York.  The Company's common stock trades on the New York Stock Exchange under the symbol "KIM."

10. Defendant Milton Cooper ("Cooper") is and has been the Executive Chairman of Kimco at all times during the relevant time period.

11. Defendant Conor C. Flynn ("Flynn") is and has been a Kimco director at all times during the relevant time period.

12. Defendant Mary Hogan Preusse ("Preusse") is and has been a Kimco director at all times during the relevant time period.

13. Defendant Philip E. Coviello ("Coviello") is and has been a Kimco director at all times during the relevant time period.

14. Defendant Frank Lourenso ("Loursenso") is and has been a Kimco director at all times during the relevant time period.

15. Defendant Henry Moniz ("Moniz") is and has been a Kimco director at all times during the relevant time period.

16. Defendant Valerie Richardson ("Richardson") is and has been a Kimco director at all times during the relevant time period.

17. Defendant Richard B. Saltzman ("Saltzman") is and has been a Kimco director at all times during the relevant time period.

18. Defendants Cooper, Flynn, Preusse, Coviello, Lourenso, Moniz, Richardson, and Saltzman are collectively referred to herein as the "Individual Defendants."

19. The Individual Defendants, along with Defendant Kimco, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20. Kimco is a real estate investment trust (REIT) headquartered in Jericho, N.Y. that is one of North America's largest publicly traded owners and operators of open-air, grocery-anchored shopping centers and mixed-use assets. The company's portfolio is primarily concentrated in the first-ring suburbs of the top major metropolitan markets, including those in high barrier-to-entry coastal markets and rapidly expanding Sun Belt cities, with a tenant mix focused on essential, necessity-based goods and services that drive multiple shopping trips per week. Kimco is also committed to leadership in environmental, social and governance (ESG)

4

issues and is a recognized industry leader in these areas. Publicly traded on the NYSE since 1991, and included in the S&P 500 Index, the company has specialized in shopping center ownership, management, acquisitions, and value enhancing redevelopment activities for more than 60 years. As of December 31, 2020, the company owned interests in 400 U.S. shopping centers and mixed-use assets comprising 70 million square feet of gross leasable space.

### The Company Announces the Proposed Transaction

21.     On April 15, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> JERICHO, N.Y. & HOUSTON--(BUSINESS WIRE)--Kimco Realty Corp. (NYSE: KIM), one of North America's largest publicly traded owners and operators of open-air, grocery-anchored shopping centers and mixed-use assets, and Weingarten Realty Investors (NYSE: WRI), a grocery-anchored Sun Belt shopping center owner, manager and developer, today announced that they have entered into a definitive merger agreement under which Weingarten will merge with and into Kimco, with Kimco continuing as the surviving public company. The transaction brings together two industry-leading retail real estate platforms with highly complementary portfolios, creating the preeminent open-air shopping center and mixed-use real estate owner in the country. The increased scale in targeted growth markets, coupled with a broader pipeline of redevelopment opportunities, positions the company to create significant value for its shareholders. The combined company is expected to have a pro forma equity market capitalization of approximately $12.0 billion and a pro forma total enterprise value of approximately $20.5 billion.
>
> Under the terms of the merger agreement, each Weingarten common share will be converted into 1.408 newly issued shares of Kimco common stock plus $2.89 in cash. Based on the closing stock price for Kimco on April 14, 2021, this represents a total consideration of approximately $30.32 per Weingarten share. On a pro forma basis, following the closing of the transaction, Kimco shareholders are expected to own approximately 71% of the combined company's equity, and Weingarten shareholders are expected to own approximately 29%. The parties currently expect the transaction to close during the second half of 2021, subject to customary closing conditions, including the approval of both Kimco and Weingarten shareholders. This strategic transaction was unanimously approved by the Board of Directors of Kimco and the Board of Trust Managers of Weingarten.

The merger will create a national operating portfolio of 559 open-air grocery-anchored shopping centers and mixed-use assets comprising approximately 100 million square feet of gross leasable area. These properties are primarily concentrated in the top major metropolitan markets in the United States. The combined company is expected to benefit from increased scale and density in key Sun Belt markets, enhanced asset quality, tenant diversity, a larger redevelopment pipeline and a deleveraged balance sheet. As a result, the combined company should be uniquely positioned to drive further sustained growth in net operating income (NOI) and asset value creation through continued strategic leasing and asset management.

"This business combination is highly strategic, creating a stronger platform that is even more capable of delivering long-term growth and value creation," said Conor Flynn, Kimco's Chief Executive Officer. "Not only will the merged company and its shareholders enjoy a larger, higher quality, more diversified portfolio with significant embedded growth opportunities, the transaction also reduces the combined company's leverage, creating a stronger financial profile. This combination reflects our conviction in the grocery-anchored shopping center category, which has performed well throughout the pandemic and provides last mile locations that are more valuable than ever due to their hybrid role as both shopping destinations and omnichannel fulfillment epicenters. It also gives us even greater density in the Sun Belt markets we are targeting as well as visibility into the trends shaping necessity-based retail."

Andrew "Drew" Alexander, Chairman, President and Chief Executive Officer of Weingarten, stated, "Combining these highly complementary platforms is a win-win for shareholders of both companies. After examining the deal from every angle, it became increasingly clear that the potential of the integrated business is much greater than the sum of its parts. The combined company's increased size and scale, together with its financial strength, should drive an advantageous cost of capital, allowing the combined company to more readily pursue value creation opportunities. We are excited to deliver this transaction to our shareholders, who will realize compelling and immediate value while also benefiting from the upside potential associated with owning the industry's preeminent open-air shopping center and mixed-use REIT."

**Summary of Strategic Benefits**

The merger of Kimco and Weingarten is expected to create a number of operational and financial benefits, including:

- **Enhanced Asset Diversification and Quality:** Adding Weingarten's collection of 159 high-quality, open-air grocery-anchored shopping centers and mixed-use properties advances Kimco's strategy of providing tenants and shoppers with greater last-mile fulfillment opportunities.

- **Expanded Geographic Reach in High-Growth, First-Ring Suburbs of Core Markets:** The transaction will grow Kimco's presence in strategic Sun Belt markets such as Houston, Miami, Phoenix, Atlanta and Orlando, boasting positive demographic and migration trends along with strong growth prospects. The Sun Belt and high-barrier-to-entry top coastal markets will represent more than 82% of the combined company's total annualized base rent (ABR).
- **Greater Tenant Diversity:** The combined company's top ten tenants are essential, industry-leading grocers such as Kroger, Whole Foods and Walmart and best-in-class retailers such as TJX, Ross Stores and Burlington. These brands will represent approximately 19.3% of total ABR, with no single tenant representing more than approximately 4%.
- **Compelling Value Creation Pipeline:** The combination of Weingarten's largely funded and de-risked development pipeline, together with Kimco's significant redevelopment projects and entitlements embedded in its existing portfolio, present compelling future growth opportunities. Most of these projects are located in markets where Kimco has an existing presence.
- **Substantial Operational Savings and Corporate Synergies:** The combined company is expected to realize annualized cost synergies of $35 to $38 million on a GAAP basis (excluding accounting adjustments) and $31 to $34 million on a cash basis. These expected savings are attributable to both companies' complementary business operations and significant regional overlap in high-growth Sun Belt markets where economies of scale can be realized. These synergies are expected to be substantially realized in the first full fiscal year post completion of the transaction.
- **Earnings Accretion and NOI Growth Opportunities:** Upon closing, the transaction is expected to be immediately accretive to earnings metrics. The combined company is also well positioned to increase cash flow at the property level by marking rents to market rates, realizing contractual rent increases, re-merchandising, growing portfolio occupancy and pursuing new value creation opportunities.
- **Increased Financial Strength and Flexibility:** The business combination will further strengthen Kimco's balance sheet by reducing net debt plus preferred to EBITDA. As a larger, lower leveraged company, Kimco is expected to have more cost-effective access to capital and benefit from earnings enhancement as existing debt matures in the coming years. This improved credit profile and greater liquidity put Kimco on a path toward potential future credit ratings upgrades.

**Leadership and Organization**

The combined company is committed to retaining a strong, highly qualified and diverse Board that has the requisite skills, knowledge and experience to oversee the company and its long-term strategic growth and performance. The number of directors on Kimco's Board of Directors will be expanded to nine, with one member of the existing Board of Trust Managers of Weingarten to be appointed

to the Kimco Board. Milton Cooper will continue to serve as Executive Chairman of the Board of Directors of the combined company. Mary Hogan Preusse will continue to serve as Lead Independent Director for the combined company.

The Kimco management team will lead the combined company, with Conor Flynn as Chief Executive Officer, Ross Cooper as President and Chief Investment Officer, David Jamieson as Chief Operating Officer and Glenn G. Cohen as Chief Financial Officer. The approach to integration planning will draw from the best practices of both companies to ensure continuity for tenants, employees and other stakeholders.

Upon completion of the merger, the company's headquarters will remain in Jericho, N.Y. The company will retain the Kimco name and will continue to trade under the ticker symbol KIM (NYSE).

**Dividend Policy**

Kimco intends to maintain its current dividend level post-closing.

**First Quarter Update**

During the first quarter of 2021, Kimco executed 358 leases totaling 2.8 million square feet which includes 121 new leases for 586,000 square feet. Pro-rata rental rate spreads on comparable leases increased 6.8%, with rental rates for new leases up 8.2% and renewals and options growing by a combined 6.4%. Kimco ended the quarter with a pro-rata occupancy of 93.5% with anchor and small shop occupancy at 96.2% and 85.8%, respectively. For the first quarter of 2021, Kimco collected 94% of its total pro-rata billed base rents.

**Advisors**

Barclays and Lazard are acting as financial advisors, and Wachtell, Lipton, Rosen & Katz is acting as legal advisor to Kimco. J.P. Morgan is acting as exclusive financial advisor, and Dentons is acting as legal advisor to Weingarten.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

22. On June 23, 2021, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Financial Projections

24. The Registration Statement contains projections prepared by the Company's and Weingarten's management concerning the Proposed Transaction, but fails to provide material information concerning such.

25. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

26. In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

27. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Cash NOI; (ii) FFO as Adjusted per share; and (iii) Unlevered Free Cash flow.

28. With respect to Weingarten's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Cash NOI; (ii) FFO per share; and (iii) Unlevered Free Cash Flow.

29. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Financial Opinions

30. The Registration Statement contains the financial analyses and opinion of Barclays Capital Inc. ("Barclays") and Lazard Frères & Co. LLC ("Lazard") concerning the Proposed Transaction, but fails to provide material information concerning such.

31. With respect to Barclays's *Selected Comparable Company Analysis*, the Registration Statement fails to disclose the individual multiples and metrics of each of the companies observed in the analysis.

32. With respect to Barclays's *Selected Precedent Transaction Analysis*, the Registration Statement fails to disclose the individual multiples and metrics of for each of the transactions observed in the analysis.

33. With respect to Barclays's *Discounted Cash Flow Analysis* for Kimco, the Registration Statement fails to disclose: (i) Kimco's projected after-tax unlevered free cash flows for fiscal years 2021 through 2025; (ii) the Company's terminal value; (iii) the inputs and assumptions underlying Barclays's use of the range of discount rates of 7.25% to 7.75%; (iv) the inputs and assumptions underlying Barclay's use of a perpetuity growth rates of 2.75% to 3.25%; and (v) the fully diluted number of shares of Kimco common stock.

34. With respect to Barclays's *Discounted Cash Flow Analysis* for Weingarten, the Registration Statement fails to disclose: (i) Weingarten's projected after-tax unlevered free cash flows; (ii) Weingarten's terminal value; (iii) the inputs and assumptions underlying Barclays's use of a range of perpetuity growth rates of 3.25% to 3.75%; (iv) the inputs and assumptions underlying Barclays use of the range of discount rates of 7.75% to 8.25%; and (v) the fully diluted number of Weingarten common shares.

35. With respect to Lazard's *Discounted Cash Flow Analysis* for Kimco, the Registration Statement fails to disclose: (i) the stand-alone unlevered, after-tax free cash flows that the Company was forecasted to generate during the fiscal years ending December 31, 2021 through the fiscal year ending December 31, 2024; (ii) the Company's terminal value; (iii) the inputs and assumptions underlying Lazard's use of the range of exit capitalization rates of 5.5% to 6.5%; and (iv) the inputs and assumptions underlying Lazard's use of a range of discount rates of 8.0% to 9.0%.

36. With respect to Lazard's *Discounted Cash Flow Analysis* of Weingarten: (i) the stand-alone unlevered, after-tax free cash flows that Weingarten was forecasted to generate during the fiscal years ending December 31, 2021 through the fiscal year ending December 31, 2024; (ii) Weingarten's range of estimated terminal values; (iii) the inputs and assumptions underlying Lazard's use of the range of exit capitalization rates of 5.5% to 6.5%; and (iv) the inputs and assumptions underlying Lazard's use of the range of discount rates of 8.0% to 9.0%.

37. With respect to Lazard's *Selected Public Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics of each company Lazard observed in its analyses.

38. With respect to Lazard's *Comparable Public Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics of each company observed in its analyses.

39. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Potential Conflicts of Interest

40. The Registration Statement omits material information regarding potential conflicts of interest involving Barclays.

41. The Registration Statement notes that in connection with its role as financial advisor, Barclays may receive "an additional fee of up to $4,000,000 payable in Kimco's sole discretion[.]" However, the Registration Statement, fails to disclose whether the Company intends to pay Barclays such a fee.

42. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any

material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

47. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

48. The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

49. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was

disseminated, to corroborate that there are no material misstatements or omissions.

50. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

51. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of Kimco within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Kimco, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in

the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

57. In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 23, 2021                                                               Respectfully submitted,

                                                                                         By: */s/ Joshua M. Lifshitz*
                                                                                             Joshua M. Lifshitz

Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*